JAMES V. SCHENCK, Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellants.

A board of supervisors has authority to direct the purchase of such articles of furniture as are necessary to properly equip and furnish the county jail, and an account for articles so purchased is a proper county charge.

The supervisors of the county of New York have the same power as to furnishing what is known and recognized by law as the county jail, *i. e.,* "the Ludlow street jail," although such jail may technically be the property of the city; and this is so, assuming that such jail cannot be used for the confinement of criminals sentenced by State courts, and that judgment debtors committed upon executions issued out of courts of record are absolutely bound to support themselves.

(Submitted June 20, 1876; decided September 19, 1876.)

APPEAL from judgment of the General Term of the Superior Court of the city and county of New York affirming a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Wm. C. Whitney* for the appellant.

*Adam C. Ellis* for the respondent. The board of supervisors had power to purchase the goods in question. It was a corporate act. (*People* v. *Stout,* 23 Barb., 352; 1 Black. Com., 81; *Hall* v. *Lauderdale,* 46 N. Y., 70; *Bd. Suprs.* v. *Brewer,* 4 Lans., 24; *People* v. *Ingersoll,* 58 N. Y., 1; *State Bd. of Agriculture* v. *Citizens' St. R. Co.,* 17 Am. R., 702; *People* v. *Goodwin,* 50 Barb., 562; 34 id., 38; 7 Rob., 592; 6 Abb. [N. S.], 63; 5 id., 223; 26 Barb., 256; 10 Abb., 139; 6 N. Y., 560.)

EARL, J. This action was brought to recover the price of certain blankets, mattresses, pillows and bedsteads, alleged by the plaintiff to have been sold and delivered by him to the

county of New York for the use of the county jail. The goods were ordered, audited and allowed by the board of supervisors of the county of New York, and hence the only question to' be considered is whether they became a proper charge against the county. If they did, then, under chapter 304 of the Laws of 1874, the city is liable to pay for them.

The various counties of the State are required to have jails, and each is to be erected and maintained at the expense of the county in which it is located. (1 R. S., 369, 380; 2 id., 429, 754.) While there is no express authority to furnish a jail, there can be no doubt that the board of supervisors of any county has authority to do so, by virtue of its general and incidental powers, as the local administrator of the affairs of the county and its local legislature. A jail is a place for the confinement of prisoners and those persons in the custody of the law upon civil or criminal process, and it would not be complete without the means of warming, lodging and feeding the persons confined therein. It is the manifest duty of each county to maintain its jail, in all its equipments, in a condition to safely and properly keep all persons committed thereto.

The powers of a county, as a body politic, can only be exercised through its board of supervisors, and it has power to purchase and hold such personal property as may be necessary to the exercise of its corporate or administrative powers, and to make such orders for the regulation and use of its corporate property as may be deemed conducive to the interests of its inhabitants. The board of supervisors of any county has power to make such orders concerning the corporate property of the county as it may deem expedient, and to examine, settle and allow all accounts chargeable against the county. (1 R. S., 365, 367.) The following expenses are county charges: The expenses necessarily incurred in the support of persons charged with, or convicted of, crimes and committed therefor to the jail of any county; the sums necessarily expended in repairing the court-house and jail of any county, and the contingent expenses necessarily incurred for the use and benefit of the county.

(1 R. S., 387.) Taking all these provisions and considering them in connection with the general system of our government by which the prisons and their management are committed to the local divisions of the State in which they are situated, with other local affairs, to be administered and managed by officers chosen by those who are to bear the burdens, there can be no doubt that the proper furniture of a county jail, like the furniture of a court-house, clerk's office or poor-house, is a proper county charge. The provision of the statute (2 R. S., 439) which requires the outgoing sheriff to deliver to his successor the jail and its "appurtenances and the property of the county therein," clearly has reference to the furniture in the jail, and shows that the county is expected to own such property.

It is not seriously disputed that this is so as to all the county jails in the State except the jail in the county of New York. It is claimed, however, that that jail did not belong to the county of New York, and hence that the supervisors had no right to incur any expense in furnishing the same. No point seems to have been made at the trial that the Ludlow street jail was not a jail of the county of New York. No proof whatever was given on the subject except that the witnesses all spoke of it as the county jail of the county of New York, and in all the proceedings of the board of supervisors it was spoken of as such. This certainly was enough, in the absence of any contradictory evidence, to show as against the county, that it was a county jail. It is so called in the statutes. (1 R. S., 380, 2 id., 429; Laws of 1860, chap. 510, § 4; Laws of 1861, chap. 240.) It may be that the jail was originally built at the expense of the city, and that at the time these articles were purchased it was technically the property of the city. These circumstances can make no difference. The law had made it the county jail and placed it in the custody of the county and its officers. It was then to perform the functions of a county jail and was to be treated, managed and controlled like any other county jail except as the law changed its status.

It is further claimed that the jail in the county of New

York can only be used for the confinement of persons committed on civil process, and that as such persons must, by statute, be kept at their own expense, their expenses were not a proper county charge. (2 R. S., 377.) It is provided that persons arrested by virtue of an execution issued upon any judgment rendered in any court of record, and every person surrendered in exoneration of bail, shall be kept at his own expense. All other persons confined in any jail are to be kept at the expense of the county, such as persons held upon *mesne* process for civil or criminal contempt, by virtue of process issued by courts not of record, and persons detained as witnesses; all such persons are to be confined by the sheriff in the county jail. It is true that there is no specific provision that they shall be supported in jail at the expense of the county, neither is there any provision that they shall be kept at their own expense, as in the cases above mentioned. There is no doubt that their support is a county charge like that of imprisoned criminals, and, under our system of government, such support could rest nowhere except upon the county. The sheriff is also required to receive into the county jail persons committed by the United States courts, but such persons are to be supported by the United States. (2 R. S., 443, 774.)

Assuming, therefore, but not deciding, that the county jail in the city of New York is not to be used for the confinement of criminals sentenced by State courts, and, also, that judgment debtors committed upon executions issued out of courts of record are absolutely bound to support themselves, yet there was every reason why the county of New York should have a jail, well equipped and furnished, for the custody and confinement of the other persons mentioned.

It follows, from these views, that the judgment must be affirmed, with costs.

All concur; ANDREWS, J., taking no part.

Judgment affirmed.