JAMES W. WADSWORTH, Appellant, *v.* THE BOARD OF SUPERVISORS OF LIVINGSTON COUNTY et al., Respondents.

Supervisors — county clerk — Livingston county — unless authorized by special statute, boards of supervisors have no power to make contract to pay county clerk for re-indexing deeds and mortgages recorded in office of such clerk — void contract with clerk of Livingston county.

1. A county is a municipal corporation formed for the purpose of exercising the powers and discharging the duties of local government and the administration of public affairs conferred upon it by law. Its powers and duties, except as otherwise provided by law, are exercised by its board of supervisors, and the board is vested

with such powers of local legislation and administration as are expressly granted to it by the legislature or which are necessarily or reasonably implied from the powers so expressly conferred.

2. The board of supervisors of Livingston county entered into a contract with the clerk of that county by which he agreed to make, in a specified manner, a new index of all deeds of conveyance and mortgages recorded in said county, for which said board agreed to pay at certain specified rates. The work was carried on by the clerk during the term he was then serving and throughout the succeeding term for which he was also elected and after the expiration of that term. Upon the completion of the work he presented to the board of supervisors a claim for the balance due him. The board rejected the claim and claimant procured a writ of certiorari requiring the members and clerk of the board to make a return of their proceedings with reference to his claim. Before any hearing in such proceeding, a compromise was effected and the board of supervisors audited and allowed the account for a sum somewhat less than the amount claimed. Before this amount was paid, this action was brought by a resident and taxpayer of Livingston county to prevent the payment thereof. *Held*, that the contract with claimant is void; that the board of supervisors had no power, in the absence of a special statute authorizing them so to do, to make such contract or to compromise and pay any sum thereon, and hence, that plaintiff is entitled to the relief demanded in the complaint. (County Law, § 26 [Cons. Laws, ch. 11]; Real Property Law, § 316 [Cons. Laws, ch. 50].)

3. The statutes, both general and special, relating to and authorizing the payment of compensation to county clerks for services rendered by them, collated, examined and explained.

*Wadsworth* v. *Board of Supervisors*, 159 App. Div. 934, reversed.

(Argued February 3, 1916; decided March 24, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 8, 1913, affirming a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles D. Newton* for appellant. The contract and the supplemental contract between Curtis and the board

of supervisors were, and each of them was, *ultra vires*, illegal and void. (*Chemung Canal Bank* v. *Supervisors*, 5 Den. 517; *People ex rel. Tracy* v. *Green*, 47 How. Pr. 332; *Osterhoudt* v. *Rigney*, 89 N. Y. 222; *Supervisors* v. *Ellis*, 59 N. Y. 620; *People ex rel. Smith* v. *Clark*, 174 N. Y. 262; *People* v. *Sutherland*, 207 N. Y. 22; *M. L. Ins. Co.* v. *Dake*, 87 N. Y. 256; *People* v. *Supervisors*, 24 Wend. 181.) Any subsequent act upon the part of the board of supervisors or the subsequent incumbent of the office of county clerk, seeking to ratify these contracts, is equally void. (2 Morawetz on Priv. Corp. [2d ed.] § 621; *Brady* v. *New York*, 16 How. Pr. 432; 77 N. Y. 130; *S. D. W. W. Co.* v. *San Diego*, 59 Cal. 517; *Zottmon* v. *San Francisco*, 20 Cal. 96.) The new indexes, made pursuant to the contracts, were not copies of books of records in the office of the county clerk, within the meaning of section 26 of the County Law. (*C. & E. I. R. Co.* v. *People*, 200 Ill. 237; *State* v. *Brill*, 58 Minn. 152; *Kipp* v. *Dawson*, 59 Minn. 82; *State* v. *Schwin*, 65 Wis. 227; *State* v. *Gee*, 28 Oreg. 100.) The action of the board of supervisors in passing the resolution of December 12, 1906, cannot be sustained as a compromise of a disputed claim, for the reason that the contract upon which it was based was *ultra vires* and void and no subsequent act of the board could give it validity. (*Osterhoudt* v. *Rigney*, 98 N. Y. 222; *People* v. *Lawrence*, 6 Hill, 244; *Supervisors* v. *Ellis*, 59 N. Y. 620; *Demerest* v. *Town of New Barbadoes*, 40 N. J. L. 604; *Palfrey* v. *P. S. & P. R. R. Co.*, 86 Mass. 55; *Village of Fort Edward* v. *Fish*, 156 N. Y. 363.)

*H. V. Pratt* and *Walter S. Hubbell* for respondents. The contract and the supplemental contract between the board of supervisors and Mr. Curtis were valid. They were not *ultra vires*, illegal or void. (Dillon on Mun. Corp. § 89; *Woods* v. *Supervisors*, 136 N. Y. 403; *City of Buffalo* v. *Bettinger*, 76 N. Y. 393; *Schenk* v. *Mayor*,

*etc.*, 67 N. Y. 44; *People ex rel. Wakely* v. *McIntyre*, 154 N. Y. 628; *Kelly* v. *Mayor, etc.*, 4 Hill, 263; *Striker* v. *Kelly*, 7 Hill, 9; *Moore* v. *Mayor*, 73 N. Y. 238; *People ex rel. Conine* v. *Steuben County*, 183 N. Y. 114; *North Electric Co.* v. *New York*, 48 App. Div. 14; *Shier* v. *City of Buffalo*, 35 Hun, 564.) If section 265 of the Real Property Law applies to the county of Livingston it should not be construed as requiring the clerk to make a new index without compensation. (*People* v. *City of Kingston*, 101 N. Y. 96; *People ex rel. Williams* v. *County Court*, 105 App. Div. 1; *Converse* v. *United States*, 21 How. [U. S.] 463; *United States* v. *Brindle*, 110 U. S. 688; *Wile* v. *Wilson*, 93 N. Y. 255; *People ex rel. Welch* v. *Nash*, 62 N. Y. 484.) Even if the original contract was *ultra vires* the action of the board of supervisors in compromising the claim of Mr. Curtis while certiorari proceedings were pending was valid. (1 Pars. on. Cont. 438; *Minehan* v. *Hill*, 114 App. Div. 854; *Supervisors* v. *Bowen*, 4 Lans. 24; *Vil. of Fort Edward* v. *Fish*, 156 N. Y. 363.) The action of the board in adopting the compromise with Mr. Curtis is not an attempt to reaudit a claim previously rejected by the board, but it is a settlement of an existing litigation in which the validity of the rejection of the claim was at issue. (*Post* v. *Thomas*, 212 N. Y. 264; *Simons* v. *Am. Legion of Honor*, 178 N. Y. 263.)

CHASE, J. In 1900 the indexes of deeds of conveyance in use in the office of the clerk of the county of Livingston contained many errors, and were consequently unreliable.

On the 12th day of March, 1900, the board of supervisors of said county, by a committee duly authorized by said board, entered into a contract with Henry B. Curtis, the duly elected and acting clerk of said county, by which Curtis agreed " to make and complete a full, proper and legible index of all deeds of conveyance on record in the

office of the clerk of the county of Livingston, filed and recorded during the period of time between the year 1821, inclusive of that year, and the first day of January, 1900; said index to include indices of every name, whether of grantors or grantees, or of wives or husbands of said grantors or grantees, in said deeds contained; to include the towns in which all property forming the subject-matter of said deeds is situated; and to include the certain years in which the aforesaid deeds were recorded together with references to the respective book of deeds and page therein their records containing."

Said Curtis further agreed to complete said index within the period of four years from the date of the agreement. The board agreed to pay therefor at the rate of "Six cents each for all names, whether of grantors or grantees or of the wives or husbands of said grantors or grantees, in said deeds expressed," and said board also therein further agreed to supply and furnish all index books, stationery and materials of every name and nature necessary for the construction and completion of said index.

The defendant Curtis took office as county clerk of said county on January 1, 1899. His term of office expired with the end of the year 1901, but he was re-elected for a term of three years. He ceased to hold office as such county clerk at the end of 1904.

On the 13th day of January, 1903, the board of supervisors entered into a further and supplemental agreement with Curtis waiving the period provided in the agreement of March 12, 1900, in which said index should be completed and providing therein that in lieu thereof Curtis should proceed to the completion of the index at an average rate of speed per year not less than that by which the work had theretofore been performed under said agreement. The agreement was not wholly consummated when Curtis ceased to hold office as county clerk at the end of 1904. He continued in the perform-

ance of his agreement with the board of supervisors after the expiration of his terms as county clerk without objec-. tion, so far as appears, from the newly-elected county clerk and said index was completed during the year 1905. The county paid to Curtis from time to time on account of said contract $8,057.94. In the month of November, 1905, Curtis presented to the board of supervisors a statement of his services under said contract for indexing, amounting to $14,465.88, from which he deducted the payments that had been made thereon, leaving a balance alleged to be due him of $6,407.94. The amount included in the account rendered by Curtis for work performed after the expiration of his terms as county clerk was about $650. Thereafter and on January 11, 1906, the board rejected and disallowed the said account. Said Curtis thereupon procured a writ of certiorari directed to the individuals composing the board of supervisors and to the clerk of the board requiring them in substance to make return of all of their proceedings in and about the making of said contract and the receipt and rejection of said account. A return thereto was duly filed, but before any hearing was had in said proceeding, and at the regular session of the board of supervisors in 1906, a resolution was passed reciting at length the presentation of said account and a history of said contracts and the work done in pursuance thereof and of the litigation growing out of the rejection of the account and an offer by Curtis, as a compromise of his account, to deduct therefrom $1,500.

The resolution then in terms audited and allowed the account at $5,470.94, which is $1,500 less than the amount then due and unpaid on said account as claimed by Curtis, and directed the payment thereof. The resolution also provided that immediately upon the payment of said account the attorney for the board of supervisors join with the attorney for Curtis in the discontinuance of the certiorari proceeding. Before the account was actu-

ally paid this action was brought by the plaintiff as a resident and taxpayer of the county of Livingston to prevent the payment of said account.

The contract provides for general compensation to Curtis for the work therein described. It is not confined to the payment of money necessarily expended by him.

The account of Curtis is based on the contract. It is well settled that the audit cannot be sustained simply because the work pursuant to the contract has been executed. (*Hart* v. *City of New York*, 201 N. Y. 45, 55.) It must rest upon the power of the board of supervisors to make the contract with Curtis on which the account is based.

The board of supervisors of a county is vested with such powers of local legislation and administration as are conferred upon it by the legislature. Its power is co-extensive with the power expressly granted to it or which is necessarily or reasonably implied from the powers so expressly conferred. (*Chemung Canal Bank* v. *Supervisors of Chemung County*, 5 Denio, 517; *Board of Supervisors, Richmond Co.*, v. *Ellis*, 59 N. Y. 620; *People ex rel. Hotchkiss* v. *Supervisors, Broome Co.*, 65 N. Y. 222, 225; *People ex rel. Wakeley* v. *McIntyre*, 154 N. Y. 628; *People* v. *Sutherland*, 207 N. Y. 22; *People ex rel. Smith* v. *Clarke*, 174 N. Y. 259, 262; *People ex rel. Sweet* v. *Board of Supervisors, St. Lawrence Co.*, 101 App. Div. 327; *People ex rel. Slosson* v. *Board of Supervisors, Westchester Co.*, 116 App. Div. 844; *Woods* v. *Board Supervisors, Madison Co.*, 136 N. Y. 403.)

A county is a municipal corporation "formed for the purpose of exercising the powers and discharging the duties of local government, and the administration of public affairs conferred upon it by law." (County Law, § 3.) Its powers and duties, except as otherwise provided by law, are exercised by its board of supervisors. There is no provision of the legislature giving to the county of Livingston or its board of supervisors express power to

make the contract with Curtis which it made. It is claimed that such power is necessarily or reasonably implied from subdivision 1 of section 12, section 26, and subdivisions 9 and 15 of section 240 of the County Law. Section 12 of the County Law (Chap. 11 of the Consolidated Laws, formerly Laws of 1892, chapter 686), so far as it is applicable, is as follows:

"§ 12. General powers.— The board of supervisors shall: 1. Have the care and custody of the corporate property of the county   *   *   *."

Section 26 of the County Law is as follows:

"§ 26. County records.— Such boards shall have the general charge of the books and records of the county, subject to the legal rights of the officers using or having custody of the same, and shall provide for their safekeeping. They may authorize county officers having official custody or control of any such books and records, or of maps and papers, to cause copies thereof to be made and certified for the public use; and it shall be their duty to cause the same to be made and certified whenever by reason of age or exposure, or any casualty, the same shall be necessary. Any officers making such transcripts or copies shall be paid such sum therefor as may be just; but such payment shall not exceed a sum to be certified by the county judge, or a justice of the supreme court of the judicial district, as reasonable therefor. Such board of supervisors shall not accept and pay for any such services, until the work shall be examined and approved as to its manner and form of execution, by such judge or justice; nor shall any board of supervisors order any such work to be done until such judge or justice, after an examination, shall certify that such work is necessary for the security and safety of the public records."

Section 240 of the County Law (formerly Laws of 1892, chapter 686, § 230), so far as is applicable, is as follows:

"§ 240. County charges.— The following are county charges:   *   *   *

" 9. The moneys necessarily expended by any county officer in executing the duties of his office in cases in which no specific compensation for such services is provided by law   *   *   *.

" 15. The expenses necessarily incurred, and sums authorized by law, or by the board of supervisors, pursuant to law, to be raised for any county purpose."

The provisions quoted relating to the power of boards of supervisors must be read in connection with the statutory provisions relating to the power and duty of a county clerk.  His general powers and duties are provided by section 161 of the County Law (Chapter 11 of the Consolidated Laws, formerly Laws of 1892, chap. 686), which, so far as applicable, is as follows:

" § 161. General powers and duties.— The county clerk shall:

" 1. Have the custody of all books, records, deeds, parchments, maps and papers, deposited in his office in pursuance of law, and attend to their arrangement and preservation.

" 2. Provide at the expense of the county, all necessary books for recording all papers, documents or matters authorized by law to be recorded in his office.   *   *   *."

By section 2 of chapter 200 of the Laws of 1903, which took effect April 24, 1903, it was provided that each clerk of the county of Livingston thereafter elected should receive an annual salary, and it also provided that "It shall be the duty of said clerk to perform all services which he is or shall be required or authorized by law to perform by virtue of or by reason of his holding such office, for the state, for the county, and for individuals, including his duties as clerk of every court of which he is or shall be clerk; and no compensation, payment or allowance shall be made to him for his own use for any such services except the salary aforesaid."

It is quite clear that if the contract had been made with a county clerk in Livingston county, elected after the act

of 1903 took effect, it would be illegal and unenforceable. Curtis, however, was elected before the act took effect and at all times referred to in the contract obtained his compensation as county clerk from fees allowed by statute.   Such fees in civil actions are provided by section 3301 of the Code of Civil Procedure and for services generally by section 3304 of said Code.

Section 3280 of the Code of Civil Procedure (now section 252 of the Judiciary Law [Cons. Laws, ch. 30] and section 67 of the Public Officers Law [Cons. Laws, ch. 47]) provides:

" § 3280.  Each clerk of a court must perform all the duties required of him, in the course and practice of the court, without fee or reward, except as expressly prescribed by law.   Each public officer, upon whom a duty is expressly imposed by law, must execute the same without fee or reward, except where a fee or other compensation therefor is expressly allowed by law.   *   *   * "

This court has held that necessary expenditures of a special or exceptional character in executing the duties of the office of county clerk for services not required of him under the general laws may properly become a county charge under subdivision 9 of section 230, now section 240 of the County Law.  (*People* v. *Sutherland,* 207 N. Y. 22, 32.   See *Matter of Walsh* v. *Supervisors of Albany County,* 20 App. Div. 489.)

Although the respondent Curtis expressly disclaims in his brief that section 316 of the Real Property Law (Cons. Laws, ch. 50) has any application to the contract in question, we think that its provisions should be considered in connection with the other statutes quoted.   That section (formerly section 265) provides as follows:

" § 316.  Indexes.— Each recording officer must provide, at the expense of his county, proper books for making general indexes of instruments recorded in his office, and must form indexes therein, so as to afford correct and easy reference to the books of record in his office.   There

must be one set of indexes for mortgages or securities in the nature of mortgages, and another set for convey- ances and other instruments not intended as such mort- gages or securities. Each set must contain two lists in alphabetical order, one consisting of the names of the grantors or mortgagors, followed by the names of their grantees or mortgagees, and the other list consisting of the names of the grantees or mortgagees, followed by the names of their grantors or mortgagors, with proper blanks in each class of names, for subsequent entries, which entries must be made as instruments are delivered for record. This section, so far as relates to the prep-- aration of new indexes, shall not apply to a county where the recording officer now has general numerical indexes. * * *"

By chapter 7 of the Laws of 1811 (6 Webster, 99), in which it is recited that it had been found expedient that the clerks of the counties on the military tract or of which the military tract shall be a part in this state should have a numerical index, it was enacted that the clerks of the several counties aforesaid "make and keep a numerical index of the military lots within his county." The county of Livingston is not one of the counties on the military tract.

By chapter 204 of the Laws of 1827 it was further pro- vided, "That it shall be the duty of the clerks of the several counties comprehending any part of the military tract or of the Cayauga and Onondaga reservations where an index is not already provided to make and keep a numerical index of the military and reservation lots within his county."

We are of the opinion that the county of Livingston did not have a general numerical index within the mean- ing of section 316 of the Real Property Law.

Prior to 1826 there was no general provision applicable to all the counties of the state relating to indexes to the record of deeds and other instruments recorded in the

office of the clerks of the several counties of this state. It was held as late as 1881 that the indexing of a mortgage is no part of the record thereof. (*Mutual Life Ins. Co. of N. Y. v. Dake*, 87 N. Y. 257.)

By chapter 313 of the Laws of 1826 it was made the duty of the clerks of the several counties of the state, except counties where such indexes are already provided, and except the city and county of New York, whenever directed by the Court of Common Pleas of the county, to provide proper books therefor and to index deeds and mortgages as by the act provided; and the boards of supervisors of said counties were directed to audit and allow the moneys expended by the said clerks in purchasing said books and twenty-five cents for each and every hundred names contained in said indexes.

By chapter 204 of the Laws of 1827 it was among other things expressly provided: "That it shall be the duty of the board of supervisors of the several counties of the state in which the clerks are required to make a general index pursuant to the act of 1826 to audit and allow said clerks 'such further compensation for services rendered in pursuance of the said act as the judges of the court of common pleas in such counties respectively shall certify to be just and reasonable.'"

The acts of 1826 and 1827 did not authorize an expenditure on behalf of the county in excess of that in said acts expressly provided. It was held in 1840 that a county clerk who after completing the general indexes of his county as provided by said act continues the same from year to year thereafter does so with reference to his own convenience in making searches and has his compensation in the fees allowed by law for those searches and has no legal claim upon the county for compensation. (*People ex rel. Traver v. Supervisors of Dutchess County*, 24 Wend. 181.)

By chapter 199 of the Laws of 1843 it was provided that the clerks of the several counties in the state in which

general indices of deeds and mortgages have not been made and preserved according to the act of 1826 shall provide proper books for making such general indices and shall form indices therein in alphabetical order as in said act provided, and that in the counties where indices have been made under the act of 1826 the clerks of the said counties shall complete the same by bringing them down to the present time and that in either case the said clerks shall keep the said indices complete by adding to the lists as deeds and mortgages shall be sent in to be recorded, and in said act it was further provided that the county clerk is authorized to charge in his account against his county the necessary expenses incurred in purchasing said books and at the rate of fifty cents for every hundred names which he may enter in said books.

By section 7 of chapter 855 of the Laws of 1869 the legislature provided substantially in accordance with the provisions of section 26 of the County Law hereinbefore quoted. That statute and the act of 1843 have been considered by the courts.

In *People ex rel. Welch* v. *Nash* (3 Hun, 535) the board of supervisors of Cattaraugus county had by resolution authorized the county clerk to make certain new indices of the records in his office at a specified compensation. Before completing his contract his term of office expired and his successor refused to allow him to use the records for the purpose of completing his contract. The relator sought by mandamus to compel the incumbent of the office to permit him to have access to the records for the purpose of completing his work. The court held that the power then given to the board of supervisors to make such orders concerning the corporate property of the county as they may deem expedient did not confer upon such board authority to contract for indexes to be made by any other than the incumbent of the office.

The court further held that the records of conveyance required by law to be kept in the clerk's office of each

county are not necessary for and have no relation to the exercise of any corporate or administrative power of the county. Referring to the county clerk the court say that his office is created by the Constitution and the laws of the state and that his duty of making and keeping the records in his office is not for the benefit of the county but for the public at large.

The court also held that the special provisions of the act of 1869 (hereinbefore mentioned) did not authorize the board of supervisors to contract for making new books and records except as in the act expressly provided.

An appeal was taken to this court (*People ex rel. Welch v. Nash*, 62 N. Y. 484, 486), where it was held "that the subject of indexing such books is regulated by the statute (Laws of 1843, chap. 199), which prescribes the manner in which the indices shall be made, devolves the duty of making them upon the county clerk, and provides for his compensation for so doing. The board of supervisors had no power to change the method of indexing prescribed by statute, nor to transfer the duty or power of making the indices from the county clerk to any other person."

Section 7 of chapter 855 of the Laws of 1869 was substantially re-enacted as section 26, chapter 686, Laws of 1892. Chapter 199 of the Laws of 1843 was repealed by chapter 547 of the Laws of 1896 and section 265, which is substantially the same as section 316 of the present Real Property Law, was enacted. When the Real Property Law was re-enacted as chapter 50 of the Consolidated Laws, section 265 of the former Real Property Law was continued as section 316 and the said acts of 1826, 1827 and 1843 were expressly repealed.

There is nothing in section 26 of the County Law authorizing boards of supervisors to contract for the making of the indexes provided by the contract with Curtis. The authority conferred by that section is confined to making and certifying copies of books, records, maps and papers whenever by reason of age or exposure or any casualty

the same shall be necessary.    The contract with the defendant Curtis was not to copy a book, record, map or paper within the meaning of that section.

Section 316 of the Real Property Law entirely omits any provision for compensation to the county clerk for his personal services in connection with the work therein provided.    Such omission is significant, because provision for such compensation was included in the statutes of 1826, 1827 and 1843.

It appears from the statutes quoted that the county clerk has the custody of the books, records and papers in his office and that boards of supervisors simply have general charge of such books and records subject to the legal rights of the county clerk.    The only affirmative duty resting upon boards of supervisors relating thereto is to provide for their safekeeping.    None of the statutes quoted or that have been called to our attention authorize a board of supervisors either expressly or by necessary and reasonable inference to cause new general indexes of the records of a county clerk's office to be made.    The authority to make indexes of records in a county clerk's office so far as authority exists at all by general statute seems rather to be devolved upon the county clerk.    It is not necessary now to decide whether the money necessarily expended by the respondent to make the indexes now under consideration which have been accepted by the county and are in use by the public in the county clerk's office should be audited and paid by the board of supervisors of his county.

A reference to a few of the authorities called to our attention will show that they do not sustain the respondent in this case.

In *Wile* v. *Wilson* (93 N. Y. 255) this court had before it a contract made by the board of supervisors of the county of Monroe.    That contract had been fully executed and the compensation therefor had been paid.    The court did not pass upon the power of the board of super-

visors to make the contract to which it was a party.   In deciding the rights of the parties in the action it did so conceding that the contract between the plaintiff and the county was *ultra vires*.

In *Schenck* v. *Mayor, etc., of N. Y.* (67 N. Y. 44) the court upheld the power of a board of supervisors to direct the purchase of furniture for a county jail.   Boards of supervisors are given express authority to acquire real property for county jails.   The maintenance of a county jail requires that it should be furnished.   Authority of boards of supervisors to purchase such furniture is necessarily and reasonably inferred from the express authority conferred upon them.

In *Worth* v. *City of Brooklyn* (34 App. Div. 223) it appears that without any fault or negligence on the part of the plaintiff, the county clerk of the county, thirty-two large cases in his office fell from their places and in their fall scattered and mixed thousands of papers therein contained, breaking, tearing and destroying books, records and documents, and thereby for the time being greatly impairing the usefulness of the county clerk's office as a place of record for public documents.   The moneys expended by the county clerk in rearranging said papers and repairing the injuries to the books, records and documents were held to be necessarily expended by a county officer in executing the duties of his office in a case in which no specific compensation for such services is provided by law.   (County Law, § 230, now § 240.)   It does not appear that any allowance was made to the county clerk for his personal services in connection with said work.

Where a duty is expressly imposed by law upon a county clerk and no fee or other compensation therefor is allowed by law, the board of supervisors have no authority to audit and allow a claim therefor.   (*People ex rel. Hawley* v. *Howard*, 152 App. Div. 621.)   Where a statute forbids a person to ask or receive compensation for services in an official or trust capacity greater than pre-

scribed by law, an agreement to pay such extra compensation creates no binding obligation. (*Carpenter* v. *Taylor*, 164 N. Y. 171.)

A practical interpretation of the statutes relating to the power of boards of supervisors against the respondents' contention appears from the fact that many counties of the state have at different times applied to the legislature for authority to make new indexes of conveyances and other instruments in the county clerk's office in such counties, and numerous special acts have been passed by the legislature for that purpose. Reference is had to many acts relating to indexes affecting the city and county of New York, and the counties of Kings, Queens, Albany and Bronx and also to acts of which the following are typical: Chapter 442, Laws of 1863 (Cayuga county); chapter 278, Laws of 1866 (Oneida county); chapter 924, Laws of 1867, and chapter 858, Laws of 1868 (Richmond county); chapter 171, Laws of 1863 (Seneca county); chapter 235, Laws of 1884 (Dutchess, Cayuga, Tompkins and Chemung counties).

A great many other acts have been passed by the legislature to authorize special work relating to records in the county offices, the applicants for such legislation thereby assuming that it is necessary to apply to the legislature for such authority. There are too many of such acts to be enumerated in this opinion but the following are illustrative of the acts referred to: Chapter 212, Laws of 1837 (Chenango county); chapter 240, Laws of 1832, and chapter 157, Laws of 1833 (Ulster, Sullivan, Delaware and Greene counties); chapter 155, Laws of 1844 (Cayuga county); chapter 356, Laws of 1849 (Franklin county); chapter 79, Laws of 1851 (Niagara county); chapter 399, Laws of 1873 (Herkimer and other counties); chapter 219, Laws of 1910 (Sullivan county); chapter 123, Laws of 1861 (Rensselaer county); chapter 221, Laws of 1879 (Westchester county).

No power either express or implied is conferred by stat-

ute upon boards of supervisors after having made a void contract to compromise and pay the same if some discount is allowed thereon. (*Village of Fort Edward* v. *Fish*, 156 N. Y. 363, 375.)

It was held in the *Fort Edward* case, referring to the power to compromise an illegal claim on the ground that it is done in good faith to avoid litigation, that "Sound public policy will not permit the courts to countenance this dangerous method of evading a statute, for it will always be done under the claim of good faith  *  *  *."

The judgment should be reversed, and a judgment should be entered in favor of the plaintiff for the relief demanded in the complaint, with costs in all courts.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, HOGAN, CARDOZO and SEABURY, JJ., concur.

Judgment accordingly.