THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMES H. SMITH, Appellant, *v.* HENRY S. CLARKE, as Mayor of the City of New Rochelle, et al., Respondents.

NEW ROCHELLE (CITY OF) — AUDIT OF CLAIM BY COMMON COUNCIL DULY AUTHORIZED TO ACT THEREON — WHEN IT CANNOT BE SET ASIDE AS ILLEGAL — MANDAMUS.   Where a bill for printing notices of tax sales and other municipal printing of the city of New Rochelle in a newspaper duly designated for that purpose in a resolution of the common council of the city naming the official newspapers and fixing the fees for municipal notices and other legal printing, was presented to the common council and referred to its auditing committee, which found the same to be correct and reported it to the common council on two different occasions, but payment thereof was deferred for lack of funds and other reasons not affecting the audit thereof, and before its payment the auditing committee was abolished by an amendment to the charter of the city and its powers vested in a comptroller, who refused to audit the bill at the amount at which it had been twice audited, but offered to audit it at a smaller amount, a peremptory writ of mandamus, requiring the officers of the city to execute and deliver to the owner and publisher of the newspaper a warrant or draft on the city treasurer for the amount of his claim and directing payment thereof, cannot be denied upon the ground that the relator's claim was illegal because he had charged more than the rates fixed by the common council, and that, therefore, the common council had no right to audit the claim, where there is no evidence that the common council allowed more than the legal rates in auditing the claim, and the only evidence upon the subject was that the comptroller had computed the amount due to the relator and found it to be less than that allowed by the common council, and there is nothing to show upon what basis the claim was audited by the common council, since the common council had the power to act upon the claim, and its audit thereof is a judicial determination which cannot be reviewed in this proceeding, even if erroneous, or held to be void for illegality without legal and sufficient proof thereof.

*People ex rel. Smith* v. *Clarke*, 79 App. Div. 78, reversed.

(Argued March 17, 1903; decided March 31, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 28, 1903, which reversed an order of Special Term granting a motion for a peremptory writ of mandamus to

compel the defendants to pay to the relator the amount of his claim against the city of New Rochelle and dismissed such writ.

The facts, so far as material, are stated in the opinion.

*Michael J. Tierney* for appellant. The common council had jurisdiction and power to act upon the account in question ; the action of the municipality in auditing is now conclusive upon it, and beyond recall by any of its officers. It cannot be attacked in this collateral proceeding. (*Nelson* v. *Mayor, etc.*, 131 N. Y. 16 ; *Osterhoudt* v. *Rigney*, 98 N. Y. 222 ; *Klien* v. *Smith*, 54 Miss. 254 ; *Kelly* v. *Wimberly*, 61 Miss. 548 ; *Martin* v. *Bd. Suprs.*, 29 N. Y. 645 ; *People ex rel.* v. *Fitzgerald*, 54 How. Pr. 1 ; *People ex rel.* v. *Coler*, 171 N. Y. 373 ; *A. C. Nat. Bank* v. *City of Albany*, 92 N. Y. 363 ; *People ex rel.* v. *Schuyler*, 79 N. Y. 201.) There was no fraud in the presentation or audit of the account in question. (*Appell* v. *Campbell*, 64 App. Div. 400 ; *Constant* v. *University of Rochester*, 133 N. Y. 640 ; *Crook* v. *Rindskopf*, 105 N. Y. 476 ; *Bernheimer* v. *Rindskopf*, 116 N. Y. 428 ; *Roberts & Co.* v. *Buckley*, 145 N . Y. 215.) The comptroller has no right or power to interpose objection to the account in question after audit, his duty being the purely ministerial one of countersigning the draft or warrant. (Dillon on Mun. Corp. § 854 ; *Matter of Freel*, 148 N. Y. 165.)

*Hugh M. Harmer* and *Thomas Sproull* for respondents. The claim of the relator in excess of fifty cents per folio was illegal and void. (*People ex rel.* v. *Wendell*, 71 N. Y. 171 ; *Nelson* v. *Mayor, etc.*, 131 N. Y. 16 ; *Osterhoudt* v. *Rigney*, 98 N. Y. 232.) No action of the auditing committee of the board of aldermen could render this void claim a valid indebtedness against the city. (*People ex rel.* v. *Supervisors*, 73 N. Y. 173 ; *Osterhoudt* v. *Rigney*, 98 N. Y. 222.) It was competent for the comptroller to revoke or rescind the resolution auditing the account. (*People ex rel.* v. *Bd. of Suprs.*, 65 N. Y. 222 ; *People ex rel.* v. *Bd. of Suprs.*, 73 N. Y. 173.)

WERNER, J.   The relator instituted this proceeding to compel the payment to him, by the city of New Rochelle, of the sum of $654.15, upon a claim for the printing and publication of notices in tax sales and other municipal printing.   The respondent Chamberlain, as comptroller of the city of New Rochelle, disputed the relator's claim upon the ground that it was illegal, in that he had charged more than the amount fixed and allowed for such printing by the ordinances and charter of the city.

By section 62 of the charter of New Rochelle (Ch. 178, L. 1899) it is made the duty of the common council, at its first meeting in each official year, to fix the legal fee per folio of all notices which it shall direct to be published in the official newspapers of the city, and to designate the newspapers in which such notices shall be published.   In pursuance of this provision of the charter the common council, on February 19th, 1901, passed a resolution fixing the legal fee for publishing notices and other matter required to be published at fifty cents per folio, and duly designated two newspapers, one of which was the "New Rochelle Press," a newspaper owned by the relator.   Pursuant to this designation the relator, between the 19th of November and the 17th of December, 1901, published in his paper notices of tax sales and other matter, for which he presented a bill to the common council for the sum of $654.15.   The bill was referred by the council to its auditing committee, which found the same to be correct and so reported to the council.   There were then no funds in the city treasury applicable to the payment of this bill, and it was not paid.

On January 1st, 1902, the city administration changed hands, and on February 4th, 1902, the relator's claim was again presented to the auditing committee of the common council and was again audited for the full amount, but, for reasons which are not material here, payment was again deferred.

This was the situation on April 2nd, 1902, when chapter 288 of the Laws of 1902 went into effect.   That act amended

the city charter by providing for the appointment of a city comptroller; directed that all claims presented against the city should be referred to that officer for examination and report; abolished the auditing committee of the common council and vested its powers in the comptroller. This new officer refused to audit the relator's claim at the amount for which it had been twice presented and audited, but offered to audit the same at $427.00, which he claimed was all that the relator was entitled to receive. Thereupon the relator instituted this proceeding.

At Special Term the Supreme Court granted a peremptory writ of mandamus directing the defendants, as the designated officers of the city, to forthwith draw, sign, countersign and deliver to the relator a warrant or draft on the city treasurer in favor of the relator for the amount of his claim and directing payment to him. At the Appellate Division the order of the Special Term was reversed and the writ denied upon the ground that relator's claim was illegal because he had charged more than fifty cents a folio for the publication of the notices in question, and, therefore, the common council had no legal right to audit the same.

It is too obvious for discussion that if there is evidence in the record from which it can be fairly said that the auditing committee, in passing upon the relator's claim, allowed more than the legal rate of fifty cents a folio for the published matter, its action was illegal, and the decision of the learned Appellate Division should be affirmed. " Boards of audit in allowing accounts are limited to the powers conferred upon them by the statute and when they transgress their limitations their acts, like those of any other tribunal of limited jurisdiction, are void " (*Osterhoudt* v. *Rigney*, 98 N. Y. 222), and an audit by them is only conclusive when they act within their jurisdiction. (*Nelson* v. *Mayor, etc., of N. Y.*, 131 N. Y. 4.)

But the record before us contains no evidence upon which this court can hold that the common council, in passing upon the relator's claim, audited the same at a rate greater than

fifty cents a folio, and, without such evidence, there is no basis for the assertion of illegality. It is urged for the respondents that the statements of the comptroller in his affidavit presented in opposition to the granting of the writ, to the effect that he had measured the space occupied by the printed matter charged for by the relator and that the same contained only 776 folios which, at the legal rate, would amount to only $388.00, are sufficient to show the illegality of the relator's claim. The difficulty with this contention is that there is nothing in the papers, upon which the writ was granted, to indicate upon what basis the relator's claim was audited by the two committees which preceded the comptroller in the work of auditing the claim against the city. For aught that appears they may have so computed the number of folios of printing done by the relator as to entitle him to the amount $654.15 at the legal rate of fifty cents per folio and, in that event, their audit would not be illegal, but simply erroneous. An illegal audit can, of course, be attacked either directly or collaterally because it is void, but not so in case of an audit that is based upon a legal power to act, but is erroneous as to some matter of fact or law. The rule which forbids the reopening of a matter once judicially determined under competent jurisdiction, applies as well to decisions of special and subordinate tribunals as to the decisions of courts exercising general judicial powers (*Van Wormer* v. *Mayor, etc., of Albany,* 15 Wend. 262; *White* v. *Coatsworth,* 6 N. Y. 137), and decisions of boards of audit have been considered as embraced within the principle. (*Supervisors of Chenango* v. *Birdsall,* 4 Wend. 453; *People ex rel. Thomson* v. *Supervisors of Schenectady Co.,* 35 Barb. 408; *People* v. *Stocking,* 50 id. 573; *Supervisors of Onondaga* v. *Briggs,* 2 Denio, 26.) Under this rule it was not in the power of the comptroller to re-audit the claim which had been legally audited by his predecessors in office. (*Osterhoudt* v. *Rigney, supra.*)

The foregoing view of this proceeding is not affected by the allegation in the comptroller's answering affidavit that the

relator had printed only 776 folios of matter which, at the legal rate, would amount to only $388.00. This allegation raises no issue of fact because it does not contradict any of the statements in the relator's moving papers. It shows what the comptroller did, but throws no light upon the acts of the two auditing committees which preceded him. The most that can be claimed for it is that it shows the previous audits to have been either illegal or erroneous. But that is not enough for the obvious reason that if there was mere error in the audits, they cannot be reviewed in this proceeding and, if they were illegal, there is no legal proof of the fact and we cannot presume illegality.

The order of the Appellate Division should, therefore, be reversed and the order of the Special Term affirmed, with costs to the relator.

PARKER, Ch. J., O'BRIEN, BARTLETT, HAIGHT, VANN and CULLEN, JJ., concur.

Order reversed, etc.