(158 App. Div. 326.)

## PEOPLE v. JOURNAL CO.

(Supreme Court, Appellate Division, Third Department.   September 10, 1913.)

1. NEWSPAPERS (§ 5*)—COMPENSATION FOR PUBLICATION—DOUBLE COMPENSATION.

   Where a newspaper was designated as a state paper for the publication of laws under the provisions of Laws 1893, c. 248, and also as a county paper for the publication of the same laws under the provisions of Laws 1892, c. 686, it was not entitled to compensation under both laws for one publication of the statutes.

   [Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 21–26; Dec. Dig. § 5.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. STATES (§ 119*)—FISCAL MANAGEMENT—LIMITATION ON USE OF FUNDS—GIFTS.

If the statutes were construed so as to allow such double compensation for single service, they would violate Const. art. 8, §§ 9, 10, prohibiting the gift of state money to a private individual or corporation.

[Ed. Note.—For other cases, see States, Cent. Dig. § 118; Dec. Dig. § 119.*]

3. STATUTES (§ 219*)—CONSTRUCTION—EFFECT OF CONSTRUCTION BY PUBLIC OFFICERS.

The fact that public officers had for many years construed the statutes to allow such double compensation, while such interpretation is entitled to weight, is not controlling.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 296, 297; Dec. Dig. § 219.*]

4. STATES (§ 185*)—CLAIMS AGAINST STATE—EFFECT OF ALLOWANCE BY COMPTROLLER.

The allowance by the Comptroller of a bill against the state for the publication of state laws has the same effect as the audit of a bill against a county by the supervisors or one against the city by the common council, and may be impeached only for fraud or want of jurisdiction.

[Ed. Note.—For other cases, see States, Cent. Dig. § 176; Dec. Dig. § 185.*]

5. STATES (§ 178*)—CLAIMS AGAINST STATE—AUTHORITY TO ALLOW.

An auditing body is without jurisdiction to make an audit of a claim against the state when it is not authorized by any law to make such an audit.

[Ed. Note.—For other cases, see States, Cent. Dig. § 166; Dec. Dig. § 178.*]

6. STATES (§ 185*)—CLAIMS AGAINST STATE—EFFECT OF ALLOWANCE.

Although the determination of an auditing body as to its jurisdiction to audit a claim might be conclusive upon collateral attack where the facts upon which it depended were disputed, the audit of a bill by a State Comptroller for a publication of state laws both as a state and county paper is a nullity where it is uncontradicted that there was in fact only one publication, whether that fact appears on the face of the bill as presented or not.

[Ed. Note.—For other cases, see States, Cent. Dig. § 176; Dec. Dig. § 185.*]

7. STATES (§ 187*)—CLAIMS AGAINST STATE—PAYMENT—RECOVERY OF MONEY ILLEGALLY PAID.

The decision of the Comptroller as to the validity of a claim is not a final determination of its legality, as a judgment of a court would be, and if he authorized the payment of a claim which is illegal his act is a nullity, and the state is entitled to recover the money from the one to whom it had been paid in an action for money had and received.

[Ed. Note.—For other cases, see States, Cent. Dig. § 177; Dec. Dig. § 187.*]

8. STATES (§ 201*)—ACTIONS—LIMITATIONS.

Such an action is within the terms of Code Civ. Proc. § 1973, limiting actions by the state to recover public money illegally received to ten years, and is therefore not within the general six-year statute of limitations.

[Ed. Note.—For other cases, see States, Cent. Dig. § 193; Dec. Dig. § 201.*]

Appeal from Special Term, Albany County.

Action by the People of the State of New York against the Journal Company. From a judgment of the Special Term in favor of the de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fendant (140 N. Y. Supp. 546), the plaintiff appeals. Reversed, and judgment ordered for plaintiff.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Thomas Carmody, Atty. Gen., for the People.

J. S. Frost, of Albany, for respondent.

SMITH, P. J. This is an action for moneys had and received, and is brought under section 1969 of the Code of Civil Procedure to recover payments claimed to have been illegally made to the respondent for publishing as a county paper the laws of the state of a general nature. It appears that for the years 1895 to 1906, both inclusive, the Albany Evening Journal, a newspaper published by the respondent, was designated as the state paper under chapter 248 of the Laws of 1893 and amendments thereto, and was also for the same period designated by the board of supervisors of Albany county as a county paper pursuant to chapter 686 of the Laws of 1892 and amendments thereto. In each year of said period said newspaper published the Session Laws of the state once only; that is, each law of the state appeared but once and in only one issue of said paper. Thereafter respondent presented bills from time to time for such publication as by a state paper to the proper state authorities and was paid therefor at the rate of 75 cents per folio. Respondent also presented bills to the state for a publication as by a county paper of the Session Laws of a general nature during the same period. The Secretary of State to whom said last-mentioned bills were presented certified to the Comptroller that publication had been duly made as required by law, and the Comptroller thereupon audited said bills for publishing the Session Laws as by a county paper in the total amount of $12,497.10 for said period, which amount was duly paid to the respondent as a result of such audit. Of this entire amount the sum of $896.40 was paid within six years, and $4,423.20 within ten years prior to the beginning of the action. The rate for publishing the laws as a county paper is 30 cents per folio, and there is no proof in the case as to whether in any year bills for publishing as a state or county paper were first audited. The practice of presenting bills covering in part the same publication is of long standing and does not appear to have been questioned by any state official until 1907, when the then second deputy Secretary of State withdrew his certification of a certain bill of respondent's for publishing as a county paper the General Laws of the state in the county of Albany on the ground that he did not know that two charges were to be made for only one publication. Application was then made by this respondent for a writ of mandamus to require the Secretary of State to certify to the Comptroller the bill mentioned; but the proceedings were subsequently discontinued by stipulation, as more than two years had then elapsed since the passage of the Appropriation Act providing funds for the payment of such services. The issues in the present action were tried before the court without a jury and resulted in the granting of an order dismissing the complaint with costs, and from the judgment entered thereon this appeal is taken.

Before discussing the merits of the case, it is fair to the defendant

to state that there is no question here of fraud or bad faith. As before stated, it has been a custom for many years for papers designated as state papers and also designated by counties to publish laws in both political parties, to charge and receive this double compensation for one publication of the General Laws. The defendant in presenting these bills and receiving the money therefor was only following a general custom, and without doubt in full belief of its right to the compensation asked. The questions here for determination are purely questions of law.

[1-3] At the threshold of our inquiry we are met with the question of the legal right of the defendant to compensation under both statutes for one publication only. As the designated state paper, it was required to make publication of the laws at 75 cents a folio. As a designated county paper, it was required to make publication of these laws at 30 cents a folio, payable from the state treasury. Defendant made one publication only and claimed the double compensation. As a matter of first impression this demand of double compensation for single service is not equitable. The defendant was undoubtedly allowed to charge for the publication at 75 cents per folio as a state paper. Where a county board of supervisors designates a paper already designated as a state paper to publish the laws, it will not be presumed that it is intended thereby to compel the state to pay an extra 30 cents *as a gratuity* to the paper. From such a subsequent designation by the county supervisors the natural inference would seem to be that some further service was expected before the paper should become entitled to the additional compensation for a publication under the county designation. To construe the statute otherwise would impinge upon those provisions of the Constitution which prohibit the gift of state moneys to any private corporation or individual. See sections 9 and 10 of article 8 of the state Constitution. The necessary legal inference from their act would seem to be that *in addition* to the publication as a state paper a second publication of the laws should be made by the paper designated. I grant that force should be given to the interpretation given to a statute by public officers for a series of years in case of a statute the interpretation of which is in doubt. But such an interpretation is not controlling and cannot prevail as against the apparent inequity that presents itself in a demand for double compensation for a single publication. The same conclusion would follow whether the paper were first designated as a state paper or under the county law. With this conclusion the question then remains as to the effect to be given to the audit of these bills by the Comptroller, which seems to have been the question upon which the matter was determined by the Special Term.

In the case at bar, upon affidavits showing publication and the designation both as a state paper and as a county paper, these allowances were made both of the 75 cents per folio as for a publication of a state paper and of 30 cents per folio as for a publication under county designation. It is urged by the defendant here, and not without force, that this audit by the Comptroller was a determination, if need be, that the laws were twice published, once under the state designation and again under the county designation, and that, whatever the fact

may be, this adjudication cannot be impeached by showing that only one publication was made.

[4-6] The audit by the Comptroller of the bill in question probably has the same force and effect as the audit by the board of supervisors of a bill against the county, or the audit of a bill by a common council against a city under whose charter the common council is made an auditing board. These audits may be impeached upon two grounds only: First, upon the ground that the bodies were without jurisdiction to act. Secondly, for fraud or collusion. As there was no fraud or collusion in securing the payment of these bills, the only escape for the state from the effect of this audit is by proof that the Comptroller was without jurisdiction to make the audit. It seems to have been assumed by the courts that the attack made in this action is a collateral, not a direct, attack upon the audit of the Comptroller. People v. Sutherland, 207 N. Y. 22, 100 N. E. 440. Upon the question of jurisdiction I read from the decisions that, where the auditing body is not authorized in law to make the audit, it is deemed without jurisdiction to make the same. It has been many times written that, where the illegality appears upon the face of the bill presented, the audit of the bill is a nullity, as the body was without jurisdiction to audit. The illegality of the defendant's bills before the Comptroller did not appear upon their face. From the affidavits it appeared that publication had been made pursuant to the statute for which the compensation was asked. It does not even appear that the Comptroller or Secretary of State, who certified the bill, had any knowledge that only one publication had been made, although the defendant's counsel strenuously urges that both the Comptroller and the Secretary of State will be presumed to have full knowledge of all the facts and that only one publication had in fact been made. It does not seem possible that whether or not the illegality appears upon the face of the bill presented can be determinative of the jurisdiction of the auditing body. If the bill presented represented facts showing jurisdiction to act, this fact cannot give jurisdiction to the auditors to act. Their jurisdiction depends upon the *existence of facts,* and not upon their knowledge thereof, or upon the form of the bill presented. It is probably true that, if the existence of their jurisdiction depend upon disputed facts, their determination of those facts is conclusive upon the collateral attack of the audit. Where, however, as in the case at bar, there is no dispute of fact, but, by concession of the fact that there was one publication only, it appears that the Comptroller had no power or jurisdiction to audit the bill, we are required to declare the audit a nullity.

The conclusions here reached are supported by authority. In People ex rel. McSpedon v. County Treasurer of New York, 4 Abb. Prac. 22, the board of supervisors had made a contract directing that the register's books be repaired under the direction of the committee of the board on county offices. The relators were employed to do the work, and their bill was presented to the board of supervisors for the sum of $2,644.50. This bill was audited and allowed by the board of supervisors. The county treasurer refused to pay the accounts, and mandamus was brought to compel him to pay the same. It appeared

that by section 12 of the Code governing the city and county of New York it was required that all contracts for supplies involving the expenditure of more than $250 could only be let upon public competition. It was there urged that the audit of the account by the board of supervisors was conclusive as to all facts upon which the claim must rest. But it was held, however, that, *as it appeared in the record* that the contracts were not let upon public competition, "the act of the supervisors in auditing and allowing the accounts was a mere nullity," and the relators were denied the writs of mandamus for which they prayed. In People ex rel. Coughlin v. Gleason, 121 N. Y. 631, 25 N. E. 4, the charter of Long Island City required a contract to be let to the lowest responsible bidder giving adequate security. In that case a contract was let by the common council to one who was not the lowest responsible bidder. The claim of the contractors under the contract, however, was audited by the common council which had authority to audit all claims against the city. Upon the mayor's refusal to sign the warrant and upon mandamus to compel him to sign it the court denied the petitioners any relief. It was there urged, as is here urged, that the audit by the common council was conclusive as to all facts necessarily involved and as to the fact that the contract was awarded to the lowest bidder. The court held otherwise. In the opinion of Judge Earl it is said:

"Nothing was added to the validity or legality of relator's claim by the audit and allowance thereof by the common council. The claim being fundamentally illegal, the common council had no jurisdiction to audit or allow it to give it any vitality."

In Village of Ft. Edward v. Fish, 156 N. Y. 374, 50 N. E. 973, this case is cited with approval. In People ex rel. Smith v. Clarke, 174 N. Y. 259, 66 N. E. 819, a bill was presented to the common council of New Rochelle for printing public notices pursuant to a resolution designating the relator's paper therefor. This bill was audited by the auditing committee of the common council, which had authority to audit bills, at the amount claimed by the relator. There being no funds in the city treasury, the warrant was not drawn for its payment. Thereafter, under a changed law, the Comptroller was given power to audit. When the matter was presented to him he refused to audit the bill or direct its payment except for a reduced amount. The court at Special Term granted a peremptory writ of mandamus directing the mayor to sign and deliver to the relator a warrant on the city treasurer for the amount of his claim and directed payment to him. This order was reversed by the Appellate Division and the writ denied upon the ground that the relator's claim was illegal because he had charged more than 50 cents a folio for the publication of the notices in question, and therefore the common council had no legal right to audit the same. The Court of Appeals determined that the audit by the committee of the common council was conclusive, but in the opinion (174 N. Y. 262, 66 N. E. 819) Judge Werner says:

"It is too obvious for discussion, that *if there is evidence in the record* from which it can be fairly said that the auditing committee, in passing upon the relator's claim, allowed more than the legal rate of 50 cents a folio for

the published matter, its action was illegal, and the decision of the learned Appellate Division should be affirmed. 'Boards of audit in allowing accounts are limited to the powers conferred upon them by the statute, and when they transgress their limitations their acts, like those of any other tribunal of limited jurisdiction, are void,' * * * and an audit by them is only conclusive when they act within their jurisdiction."

In none of these cases did the invalidity of the claim appear upon its face. In all of them except in People v. Clarke the facts showing illegality came into the record and were not disputed. In People v. Clarke the court held that if the facts showing want of jurisdiction appeared clearly in the record the audit would have been held illegal. In Board of Supervisors v. Ellis, 59 N. Y. 620, it was held that a board of supervisors had no power to audit and allow accounts not legally chargeable to the county, and such audit was null and void, and that the payment of such audited account by the county was not a voluntary payment, and the moneys paid could be recovered back by the county. In Village of Ft. Edward v. Fish, 156 N. Y. 364, 374, 50 N. E. 973, it was held that the doctrine of voluntary payments did not apply to a municipality but only to individuals who had power to do as they pleased with their property.

[7] Within these authorities it seems to me clear that we must hold that the Comptroller had no jurisdiction to audit this claim. There was no controversy of fact before the Comptroller which he determined. The defendant concedes that one publication only was made. With this fact conceded the defendant was entitled to only one payment. He might elect to take the greater sum, but could not take both. The rule thus held would seem to be reasonable. If as we deem the one publication did not authorize the recovery of compensation under both statutes, defendant ought in justice and equity to return the moneys received to which it was not entitled. If all the facts had appeared before the Comptroller, the right of recovery would be undoubted. To hold that the act of the defendant itself by not disclosing those facts, whether purposely or innocently, has barred the state from its just right of recovery, would be a technical application of the law to defeat justice and would bring the administration of the law into disrepute. While the attack upon the audit may be in a sense collateral, it is also in a sense direct. The determination of the Comptroller should not, and does not, under the authorities cited, have the sanctity of a judgment of a court where the attention of the parties is specifically directed to the facts of the case. The Comptroller of the state is not a court to determine finally the legality of claims against the state. He may be enjoined from auditing a pending bill in an action by the Attorney General. His authority is a limited one to allow only claims for which the state is legally liable. If he transgress that authority, his action is a nullity and·gives to claimant no protection. If to this determination is allowed finality as to all facts upon which there is substantial dispute, both within reason and authority the requirement of the law is satisfied, and there is preserved to the state the right to recover moneys taken therefrom without authority of law.

[8] The question is raised as to whether the six years' or ten years' statute of limitations should govern. By section 1973 of the Code of

Civil Procedure the ten years' statute of limitation is specially prescribed in these particular actions. This special provision of law must govern this case, notwithstanding general provisions of law might otherwise create a six-year statute of limitations.

I recommend that the judgment of the Special Term be reversed and judgment be ordered for the plaintiff for the several amounts received by the defendant as representing 30 cents a folio for the publication of the General Laws, within ten years prior to the commencement of the action, with interest from the time of their receipt.

Judgment of the Special Term reversed, with costs; and judgment ordered for plaintiff for the several amounts received by defendant as representing 30 cents a folio for the publication of the General Laws within ten years prior to the commencement of the action, with interest from the time of their receipt, with costs. All concur.