LELAND S. HOYT, Plaintiff, *v.* COUNTY OF BROOME, Defendant.

Supreme Court, Special Term, Broome County, February 27, 1941.

*John H. Mangan,* for the plaintiff.

*Clarence L. Chamberlain, County Attorney,* for the defendant.

*Samuel Bernstein, Assistant Corporation Counsel,* for the city of Binghamton, *amicus curiæ.*

DEYO, J. This motion is urged primarily on the ground that subdivision 1 of section 245 of the Military Law violates sections 1 and 2 of article VIII of the Constitution of the State of New York in so far as it requires a political subdivision of the State, in this instance, Broome county, to pay a salary to the plaintiff, an employee of the county, during his absence from his duties while engaged in the performance of Federal military duty.

On May 1, 1937, the plaintiff was appointed an investigator in the department of public welfare at a monthly salary of $93.33. On June 26, 1938, he was duly commissioned a second lieutenant in the Officers' Reserve of the United States Army, and on September 1, 1940, was called into active service. Since that date he has rendered no services to the county as relief investigator. He now brings this action pursuant to the provisions of subdivision 1 of section 245 of the Military Law, to recover his salary for the month of September, 1940. Subdivision 1 of section 245 of the Military Law provides:

" 1. Every officer and employee of the State or of a municipal corporation or of any other political subdivision thereof who is a member of the national guard or naval militia, or a member of the reserve corps or force in the Federal military, naval or marine service, shall be entitled to absent himself from his duties or service while engaged in the performance of ordered military or naval duty, and while going to and returning from such duty. Notwithstanding the provisions of any general, special or local law or the provisions of any city charter, no such officer or employee shall be subjected by any person whatever directly or indirectly by reason of such absence to any loss or diminution of vacation or holiday privilege or be prejudiced by reason of such absence with reference to promotion or continuance in office or employment or to reappointment to office or to re-employment. During the absence of any such officer or employee, while engaged in the performance of ordered military or naval duty as a member of the national guard or naval militia, or as a member of the reserve corps or force in the Federal military, naval or marine service, he shall receive his salary or compensation as such officer or employee, provided the period of such absence in any calendar year does not exceed thirty days. If the period of such absence in any calendar year exceeds thirty days he shall receive for the period of absence in excess of thirty days such part of his salary or compensation as such officer or employee as equals the excess, if any, of such salary or compensation paid to him for the performance of such duty."

The provisions of the Constitution which the defendant claims this section offends are section 1 of article VIII, which provides

in part: "No county, city, town, village or school district shall give or loan any money or property to or in aid of any individual; * * * nor shall any county, city, town, village or school district give or loan its credit to or in aid of any individual * * *," and section 2 of article VIII, which provides in part: "No county, city, town, village or school district shall contract any indebtedness except for county, city, town, village or school district purposes, respectively."

The defendant's contention is that the section of the Military Law above quoted constitutes a direction for a gift of county money to an individual and attempts to create an indebtedness for other than a county purpose, thereby violating the prohibitions of both of these sections of the Constitution.

Throughout our history, beginning with the land grants following the Revolutionary war, a grateful people have sought to stimulate enlistments and to reward military service by bonuses and bounties. During the Civil war, statutes allowing counties and towns to pay bounties in advance for enlistment in the Union forces were frequent and apparently were unquestioned, except in one instance (*Powers* v. *Shepard*, 48 N. Y. 540), where the validity of such legislation is rather assumed than demonstrated. (*Henn* v. *City of Mount Vernon*, 198 App. Div. 152, 156.)

In 1874, however, the Constitution was amended by adding to article VIII thereof section 11, which provided: "No county, city, town or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation, * * *, nor shall any such county, city, town or village be allowed to incur any indebtedness, except for county, city, town or village purposes." This was something new and changed the rule previously followed in cases similar to *Town of Guilford* v. *Supervisors* (13 N. Y. 143), whereunder such gifts were practically unlimited and unrestrained. (*Stemmler* v. *Mayor*, 179 N. Y. 473, 483; *Matter of Greene*, 166 id. 485, 493.) These same restrictions, somewhat enlarged, are now contained in sections 1 and 2 of article VIII of the Constitution of 1938.

Section 245 of the Military Law first appeared upon our statute books in 1911 (Laws of 1911, chap. 103). It originally provided in effect, that officers and employees of the State or its political subdivisions who were members of the National Guard or Naval Militia might absent themselves from their duties while engaged in ordered military duty without loss of salary. By chapter 435 of the Laws of 1917 the act was amended to grant to all officers and employees engaged in Federal military service their difference in pay. In 1920 (Laws of 1920, chap. 624) the provisions added in

1917 were repealed and its operations again restricted to members of the National Guard and Naval Militia. In 1923 (Laws of 1923, chap. 458) the benefits of the section were extended to " members of the reserve corps or force in the Federal military, naval or marine service." In 1936 (Laws of 1936, chap. 185) subdivision 1 of section 245 assumed its present form.

The constitutionality of this section, in so far as the payment of salaries is concerned, was directly attacked in *Henn* v. *City of Mount Vernon* (198 App. Div. 152 [2d Dept. 1921]). There a city employee, after his return from military service in 1920, sought to recover from the city the difference between the pay he received from the government and what he would have received as a city employee. The defendant raised the identical question with which we are confronted, and the court held that the constitutional limitations had not been violated. The opinion of the distinguished jurists who concurred unanimously in that decision is, of course, entitled to great weight, and in the absence of any contrary pronouncement by the Appellate Division of the Third Department or by the Court of Appeals, their determination of the question is binding upon this court unless the factual situation presented is materially different. There are two factors which distinguish that case from the one at bar. There the court was treating with the act of 1917, which was a war measure. As Judge MILLS so aptly pointed out at page 157 of his able opinion: " The World war and our participation in it constituted a very great emergency, and the very widest scope in favor of legislative power to provide for action therein should be given by way of constitutional interpretation * * *. It is, indeed, now somewhat difficult to define what the law-making power may not do in aid of the prosecution of a war in which the nation is engaged, and, therefore, as well each component part of the nation."

Today, though concededly the necessity for trained men is great, still we are not at war, and the emergency does not require war measures.

Secondly and more important is the difference in the two statutes themselves. In 1917 subdivision 5 of section 245 of the Military Law contained the following provisions: " An officer or employee of the State or of a political subdivision thereof, other than a city, who is a member of the national guard or naval militia or is in the Federal, military, naval or marine service, shall be relieved from service therein when directed by the governor and with the consent of the Federal war or navy department, when the public interests require that he shall perform his civil duties as such officer or employee, and an officer or employee of a city may in like manner,

on request of the mayor thereof, be discharged from such service when the public interests require that he shall perform his duties as such officer or employee."

So far as the employee was concerned he remained under the control of the political subdivision throughout his Federal service, and was subject to its direction if the occasion arose. He could be called back to civil duties at any time. The relationship of employer and employee was not broken. Under the present statute the situation is entirely different for no similar provision is contained in the section now under consideration. Its absence removes every vestige of the county's authority and completely destroys the relationship of employer and employee. It is apparent that the court in the *Henn* case relied upon this subdivision of the section in reaching its decision, for Judge MILLS stated (at p. 157): " Moreover, it is to be noted that under said subdivision 5 of section 245 of the Military Law above summarized, plaintiff was at all times liable, at request of the mayor, to be recalled into the actual service of the city." For this reason there is no analogy between this situation and that presented by section 200 of the Election Law and by section 71 of the Public Officers Law. Those sections, the one granting time to vote and the other authorizing vacations with pay, are based upon the assumption that the employer-employee relationship continues. Here no such relationship exists, for no longer may Broome county exercise the slightest degree of control or supervision.

The decision in the *Henn* case not being controlling, the problem must be approached *de novo* and the question presented is whether or not Federal military service, in and by itself, is a county purpose and vitiates the contention that the directed payment by the county constitutes a gift.

The county, city, town or village purpose referred to in the constitutional limitations has been defined as something " for the common good and general welfare of the people of the municipality, sanctioned by its citizens, public in character and authorized by the Legislature." (*Sun Printing, etc., Assn.* v. *Mayor*, 152 N. Y. 257, 265.) " The purpose must be primarily the benefit, use or convenience of the city as distinguished from that of the public outside of it, although they may be incidentally benefited, and the work be of such character as to show plainly the predominance of that purpose." (*Matter of Mayor, etc.*, 99 N. Y. 569, 590.)

Does Federal military service satisfy these definitions and constitute a county purpose? The Court of Appeals on at least two occasions has said it does not. In *Bush* v. *Board of Supervisors*

(159 N. Y. 212) an act which purported to authorize the supervisors, upon the petition of a majority of the taxpayers, to raise by taxation the money required to pay any drafted man who served in the Civil war or paid commutation money, the sum of $300, was held to be violative of the provisions of the Constitution with which we are concerned. More recently, in *People* v. *Westchester County National Bank* (231 N. Y. 465), the Court of Appeals ruled on this specific question in a case involving the law granting a bonus to veterans of the World war. The court said (at p. 479): " We were all vitally interested in the war. Defeat spelled unspeakable calamity. Yet the men who gained the victory were not in any respect servants of the State. It did not call them from their homes or lead them to battle. It did nothing. It exercised no authority. It is said that our soldiers were taken from homes and occupations and compelled to risk their lives for inadequate pay while others earned large wages in safety — that the statute attempts in a small way to distribute more fairly the public burden. It is all true, but again the State was not the actor. Neither it nor its servants injured any one. It received no property for which it has not been paid. Nor were services rendered to it in any sense that services were not rendered to every city in the land. That services rendered the United States incidentally benefited every State is no foundation for a claim of obligation, however great the gratitude due. Gratitude may impel an individual to reward his benefactor. One may do as he will with his own. The State of New York may not. Its Constitution forbids." To be sure, these two cases dealt with bonuses and not current pay, but they are none the less instructive in so far as they determine that Federal service is not a State or county purpose.

It has been uniformly held that actual services must be rendered the political subdivision before pay can be given. In *Stemmler* v. *Mayor* (*supra*) a statute was declared unconstitutional which authorized the city of New York to pay the salary of a person adjudged to be the lawful incumbent of an office, who had been deprived thereof by a usurper and who had in fact rendered no services to the city. It has also been held that dual compensation cannot be given for the services rendered for the benefit of two political subdivisions. Particularly in point is *People* v. *Journal Co.* (158 App. Div. 326 [3d Dept. 1913]; affd., 213 N. Y. 1). There a newspaper which had been designated as the official paper of both the State and Albany county, published the Session Laws according to law and sought to be paid by both agencies. The court held that the paper could not be given dual compensation for the single service rendered and said (at p. 329): " To construe the statute otherwise

would impinge upon those provisions of the Constitution which prohibit the gift of State moneys to any private corporation or individual." What distinction is there between the dual service which the newspaper rendered and that which the plaintiff is here giving? If it would have been unconstitutional to grant double pay to one, is it the less unconstitutional to grant it to the other?

This court is not oblivious to the obligation due those who leave home and fireside to become versed in the arts of war, but neither must it be oblivious to the mandates of the Constitution. "The mandate of the people has excluded sentiments and motives that may guide the judgment of the lawmakers in jurisdictions where discretion is unfettered. It has subordinated flexibility and discretion to regularity and system." (*Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435, 444.) The words uttered by Washington in his farewell address are as full of significance to-day as when they were spoken and they apply with equal force to the State Constitution as to the Federal. " * * * the Constitution which at any time exists, 'till changed by an explicit and authentic act of the whole People, is sacredly obligatory upon all."

Subdivision 1 of section 245 of the Military Law, directing the payment of county moneys to those in Federal military service, is in violation of sections 1 and 2 of article VIII of the Constitution of the State of New York. In view of this determination, the defendant's motion to dismiss the plaintiff's complaint will be granted.

Submit order accordingly.